UNITED STATES of America,
Plaintiff-Appellee,

v.

Carl SKOLEK, Defendant-Appellant.

No. 72-1534.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 24, 1973.

Decided Feb. 1, 1973.

Rehearing Denied Feb. 28, 1973.

James L. Treece, U. S. Atty., and Paul D. Cooper, Asst. U. S. Atty., for plaintiff-appellee.

Jerrold M. Ladar, San Francisco, Cal., and Marvin S. Cahn, Berkeley, Cal., for defendant-appellant.

Before HILL, BARRETT and DOYLE, Circuit Judges.

PER CURIAM.

Carl Skolek, charged with violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, was convicted by a jury and appeals.

A review of the trial transcript discloses that Special Agent David Hanks of the Bureau of Narcotics and Dangerous Drugs, together with a partner, Passick, and pursuant to a pre-determined arrangement, proceeded to a room at the Ramada Inn in Denver, Colorado, on February 2, 1972, at approximately 7:00 p. m. to meet one Randall Caldwell. Caldwell appeared stating that he had recently arrived from California with his "connection" who was then en route to Caldwell's residence on Chase Street in Denver. Caldwell handed Hanks eight ounces of a substance containing cocaine which was represented to be similar in quality to prior sales between the parties. Shortly thereafter another accomplice, Patrick Egan, arrived and was also asked about the quality of the cocaine which he also stated was the same as prior transactions. Caldwell and Egan were promptly placed under arrest.

Agent Hanks then took the cocaine to his office and proceeded with another agent, Castille, to the Chase Street residence to talk with the "connection". They were met at the residence by a boarder, Robert Montoya, known through prior dealings, and informed him that they needed to talk with "Carl J. Stone" as to an alleged discrepancy in the amount of cocaine involved in the earlier transaction. Stone was an alias that the appellant, Skolek, had been using at that time, according to Hanks.

Montoya introduced the agents to Skolek who was asked whether he had sent

Caldwell and Egan to the Ramada Inn with eight ounces of cocaine. Skolek responded that he had. When told that Caldwell and Egan had wanted to sell them six rather than eight ounces, Skolek replied: "Let me figure that out." He then sat at a table with paper and pencil and began to write. Skolek then apparently suspected the circumstances for he abruptly stated, in effect, that he didn't know anything and wasn't going to say anything else. Skolek was also promptly taken into custody.

At trial, Egan, who had the same day entered a plea of guilty to one of the counts charged in the indictment, was called as a Government witness. A discussion followed with Egan's attorney concerning Egan's Fifth Amendment privilege against self-incrimination. The court denied Egan's claim of privilege and he testified. The testimony showed that Skolek, a friend of Egan's had been contacted by telephone and agreed to bring the cocaine to Denver where he planned to vacation, in return for $300. Egan and Caldwell met Skolek at the Denver airport and proceeded to the Chase Street residence. Egan stepped out of the house momentarily and when he returned, the cocaine that he had discussed with Skolek had appeared on the table, at the same time Skolek appeared. Caldwell picked up the four ounces of cocaine to which Egan subsequently added four ounces of baking powder. Skolek had been informed that the cocaine he was to carry was intended for sale.

Three of the issues in this appeal are directed to the testimony of a witness, Patrick Egan, and Egan's Fifth Amendment claim of privilege against self-incrimination. Basically, the argument is that Egan was compelled to testify without a grant of immunity and without a waiver of his privilege, an alleged denial of due process, and that Skolek was denied effective assistance of counsel and right to cross-examination by Egan's "arrangement" to testify.

■ There is no constitutional right not to be incriminated by the testimony of another. Some constitutional rights may not be vicariously asserted. See Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The privilege against self-incrimination is solely for the benefit of the witness and is purely a personal privilege of the witness, not for the protection of other parties. Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

We have held that the protection against self-incrimination, a shield of silence, is a personal privilege for the sole benefit of the witness. Edwards v. United States, 131 F.2d 198 (10th Cir. 1942), cert. denied, 317 U.S. 689, 63 S. Ct. 262, 87 L.Ed. 552. This principle is well settled. Gollaher v. United States, 419 F.2d 520 (9th Cir. 1969), cert. denied, 396 U.S. 960, 90 S.Ct. 434, 24 L. Ed.2d 424; United States v. Elliott, 418 F.2d 219 (9th Cir. 1969); United States v. Bruton, 416 F.2d 310 (8th Cir. 1969), cert. denied, 397 U.S. 1014, 90 S.Ct. 1248, 25 L.Ed.2d 428; Quintero v. United States, 409 F.2d 839 (9th Cir. 1969); Bowman v. United States, 350 F.2d 913 (9th Cir. 1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212; Poole v. United States, 329 F.2d 720 (9th Cir. 1964); United States v. Goldfarb, 328 F.2d 280 (6th Cir. 1964), cert. denied, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746.

■ Where the witness is not the party, the party may not claim the privilege nor take advantage of an error of the court in overruling it. Bowman v. United States, supra. Accord, Long v. United States, 124 U.S.App.D.C. 14, 360 F.2d 829 (1966), authored by Judge, now Chief Justice, Burger. The party, as contrasted to the witness, simply lacks standing. United States v. Ceniceros, 427 F.2d 685 (9th Cir. 1970); United States v. Elliott, supra; United States v. Bruton, supra; Lopez v. Burke, 413 F.2d 992 (7th Cir. 1969). See also Alderman v. United States, supra, and United States v. Galvez, 465 F. 2d 681 (10th Cir. 1972).

The self-incrimination provision of the Fifth Amendment is to "be accorded liberal construction in favor of the right it was intended to secure". Hoffman v. United States, 341 U.S. 479 at 486, 71 S.Ct. 814, at 818, 95 L.Ed. 1118 (1951). A defendant has a vested interest only in his own Fifth Amendment rights. Poole v. United States, supra. There is no violation of the privilege when the information elicited is used not against the witness but against another. Lopez v. Burke, supra. The privilege belonged to Egan, not to Skolek.

Egan did not undertake to test the validity of the court's rulings by standing upon his claim of privilege and refusing to answer. It is for the trial court to say whether his silence is justified. Hoffman v. United States, supra. Nor are we convinced that the court ruling was anything but correct. Egan had earlier pleaded guilty to this same count in exchange for the dismissal of others. Having pleaded guilty, he could be compelled to testify. United States v. Hoffman, 385 F.2d 501 (7th Cir. 1967); United States v. Gernie, 252 F.2d 664 (2nd Cir. 1958), cert. denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073; United States v. Romero, 249 F.2d 371 (2nd Cir. 1957); United States v. Cioffi, 242 F.2d 473 (2nd Cir. 1957), cert. denied, 353 U.S. 975, 77 S.Ct. 1060, 1 L. Ed.2d 1137. And having given the testimony under compulsion, Egan may well be protected against its use in other proceedings. Bowman v. United States, supra. See also C.R.S. § 48–5–21 (1963), which protects the substantial rights of Egan now that he has pleaded guilty to the federal charge.

The attorneys representing Skolek in this appeal succeeded the trial attorneys. They now contend that Egan and the prosecution made an "arrangement" for his testimony and that this should be the subject of meaningful cross-examination, an opportunity, they imply, not afforded Skolek at trial. While Egan's credibility as a witness may have been an important issue in the case, together with any evidence of an agreement, see Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), Skolek had ample opportunity to cross-examine in all respects, an opportunity never limited by the trial court. Failure to take advantage of that opportunity cannot seriously be urged as a ground for reversal. It may very well have been a part of their trial strategy since the testimony of Egan was not the only testimony linking Skolek with the crime. Furthermore, the trial court instructed the jury with regard to assessing the testimony of witnesses generally, and of accomplices specifically. See United States v. Plemons, 455 F.2d 243 (10th Cir. 1972); United States v. Holmes, 453 F.2d 950 (10th Cir. 1972), cert. denied, 406 U.S. 908, 92 S.Ct. 1618, 31 L.Ed.2d 819; United States v. Birmingham, 447 F.2d 1313 (10th Cir. 1971).

* * *

The Government rested its case at approximately 11:45 a. m. and a discussion immediately followed at the bench, out of the presence of the jury and off the record. The jury was then excused for lunch and a discussion concerning the admissibility of the cocaine exhibit followed. The concern was with the exhibit's chain of custody, followed by motions to suppress the cocaine and for judgment of acquittal. The court determined that the chain of custody had been satisfactorily established and denied the motion to suppress, admitting the exhibit, and the motion for acquittal.

The appellant now contends that the exhibit, the contraband, was erroneously admitted after the close of the evidence. If we understand the argument, the evidence should not have been admitted after the Government rested. We have repeatedly held otherwise. United States v. Moehring, 446 F.2d 516 (10th Cir. 1971); United States v. Keine, 424 F.2d 39 (10th Cir. 1970), cert. denied, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75; Massey v. United States, 358 F.2d 782 (10th Cir. 1966), cert. denied, 385 U.S. 878, 87 S.Ct. 159, 17 L.

Ed.2d 105. Furthermore, the matter of the exhibit and admissibility had been discussed earlier in the trial and the parties agreed to delve into the matter during the recess, to conserve time.[1] If the argument on this issue is directed to the chain of custody, we agree with the trial court that the chain was satisfactorily established.

\* \* \*

■ Other issues are raised. First the appellant complains that it is error for the court to permit the indictment to be taken into the jury room, without cautionary instructions and where an alias was used. Whether the indictment may be taken to the jury room is within the sound discretion of the trial court. Wall v. United States, 384 F.2d 758 (10th Cir. 1967); Little v. United States, 73 F.2d 861 (10th Cir. 1934); United States v. Davis, 437 F.2d 928 (7th Cir. 1971); United States v. Green, 433 F.2d 946 (5th Cir. 1970); United States v. Warner, 428 F.2d 730 (8th Cir. 1970), cert. denied, 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191; Dallago v. United States, 138 U.S.App.D.C. 276, 427 F.2d 546 (1969); United States v. Marquez, 424 F.2d 236 (2nd Cir. 1970), cert. denied, 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58; American Bar Association Minimum Standards for Criminal Justice Relating to Trial by Jury, Section 5.1 (materials to jury room). In Little v. United States, supra, we held that if the indictment goes, the jury should be charged, upon request, that the indictment is not evidence of the facts charged therein. Such an instruction was given here.

■ The jury requested the indictment after they commenced deliberation. A copy of the indictment was prepared after shielding the other counts and the names of other defendants. The copy, thus shielded, reflected only the name of Skolek, with the alias Carl Stone, and the fourth count (but not designated as a fourth count). The use of the alias was permissible where there was testimony that Skolek had used such a name. Agent Hanks, when visiting the Chase Street residence after the sale, had informed the boarder, Montoya, that he needed to speak to Stone resulting in Hanks' confrontation with Skolek. See United States v. Wilkerson, 456 F.2d 57 (6th Cir. 1972), cert. denied, 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337. The proof thus conformed to the allegations in the indictment. See United States v. Lynn, 461 F.2d 759 (10th Cir. 1972). The trial court's discretion in permitting the indictment to be taken into the jury room was properly exercised.

---

1. "MR. WEED: Your Honor, may I respectfully request the Court's permission to look at the exhibits that have been referred to as 7(A), 7(B), and 7(C), the envelopes?

"THE COURT: Please.

"MR. WEED: Could I take them over to the table?

"THE COURT: Please. Let's proceed in this fashion, if we may. Mr. Cooper, who is your next witness, please?

"MR. COOPER: Agent Hanks, Your Honor.

"THE COURT: What the Court would suggest is to go into Agent Hanks' testimony, then at recess, you can go into these exhibits.

"MR. WEED: There will be legal— what I am concerned about, when he intends to offer it as evidence. If it is not going to be at this time, I don't think it can be—I can—

"THE COURT: To what witness do you intend to introduce these exhibits, please?

"MR. COOPER: Agent Hanks, and then Mr. Egan and Caldwell.

"THE COURT: The Court will reserve ruling on any admissibility then at this time, counsel.

"MR. WEED: And any other legal agents such as chain of custody.

"THE COURT: That's right.

"MR. WEED: We will have more opportunity not to waste the Court's time.

"THE COURT: Mr. Ruybal, the Court will direct that Mr. Ruybal remain here, and then you may cross-examine.

"The court reserves ruling on 7(A), (B), and (C). The Court will reserve ruling on these exhibits."

Finally, the failure to record the grand jury testimony is challenged. There is no requirement that the proceedings of a grand jury be recorded. United States v. Cooper, 464 F.2d 648 (10th Cir. 1972), cert. denied, 409 U.S. 1107, 93 S.Ct. 902, 34 L.Ed.2d 688; United States v. Hedges, 458 F.2d 188 (10th Cir. 1972); United States v. Quintana, 457 F.2d 874 (10th Cir. 1972); Nipp v. United States, 422 F.2d 509 (10th Cir. 1970), cert. denied, 397 U.S. 1008, 90 S.Ct. 1235, 25 L.Ed.2d 420. We find no merit to the claim that the appellant's right to confront and cross-examine is violated when no record of a witnesses' prior testimony before the grand jury is available. See United States v. Cooper, supra. The appellant also argues that the indictment was based on hearsay evidence before the grand jury. This claim is equally without merit. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

Affirmed.