[Cite as *State v. Milton*, 2011-Ohio-4773.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF SUMMIT | )ss:<br>) | NINTH JUDICIAL DISTRICT |

| STATE OF OHIO | C.A. No.    25668 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| REGGIE S. MILTON | COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No.    CR 2010 06 1582(A) |

DECISION AND JOURNAL ENTRY

Dated: September 21, 2011

MOORE, Judge.

{¶1}    Appellant, the State of Ohio, appeals from the judgment of the Summit County Court of Common Pleas.  This Court reverses.

I.

{¶2}    On June 5, 2010, at approximately 9:00 a.m., Copley Police Officer Ben Campbell and his partner were running license plates at a Motel Six in Copley Township, Summit County, Ohio.  They discovered an active misdemeanor warrant from Stark County for the Appellee, Reggie S. Milton.  After verifying with the motel staff that Milton was staying there, the officers knocked on Milton's motel room.  Officer Campbell identified himself and announced that there was an outstanding arrest warrant for Milton.

{¶3}    After approximately one or two minutes, Milton answered the door.  After acknowledging that he was Milton, the officers advised him that there was a warrant for his arrest, and he was handcuffed a few steps inside of the hotel room doorway.  There was a female

sitting on a bed in the hotel room. Officer Campbell immediately walked to the bathroom "to make sure there wasn't any third person in there." He did not see any person, but did notice a big box of matches. Upon his return to the room, he noticed a metal can resembling paint thinner on the floor, and bags of tubing on the dresser. In his experience, these are items consistent with the production of methamphetamine. Out of concern for everyone's health, the officers removed Milton and the female from the room. Outside of the hotel room, the female was also handcuffed and arrested.

{¶4} On June 22, 2010, Milton was indicted by the Summit County Grand Jury for one count of illegal manufacture of drugs in violation of R.C. 2925.04, a felony of the first degree, one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a felony of the third degree, one count of possessing criminal tools in violation of R.C. 2923.24, a felony of the fifth degree, and one count of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree.

{¶5} On August 3, 2010, Milton filed a motion to suppress. The State did not file a responsive brief. On October 7, 2010, the trial court conducted a hearing on the motion. On October 18, 2010, Milton filed a supplemental brief in support of the motion, and the State filed a reply on October 28, 2010. On November 2, 2010, the trial court granted Milton's motion to suppress.

{¶6} The State timely filed a notice of appeal. It raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS."

{¶7}  In its sole assignment of error, the State contends that the trial court erred in granting Milton's motion to suppress.  We agree.

{¶8}  A motion to suppress evidence presents both a question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses.  Id. at 154–55, citing *State v. Mills* (1992), 62 Ohio St.3d 357, 366.  "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  (Internal citations omitted.)  *Burnside* at ¶8.

{¶9}  In its order granting the motion to suppress, the trial court concluded that because the officers had no concern for their safety, and had no reason to believe that anyone was armed, the officer's entry into the bathroom of the hotel room was prohibited by the Fourth Amendment.  It further concluded that because the warrantless search and seizure did not fall within any recognized exception to the exclusionary rule, the Fourth Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution, required suppression of the evidence.

{¶10}  The State argues that suppression was improper under *Maryland v. Buie* (1990), 494 U.S. 325.  Generally, the government may not search an individual's home without the

individual's consent or a search warrant supported by probable cause. *Payton v. New York* (1980), 445 U.S. 573, 589-90. This expectation of privacy is extended to occupants of a hotel room. *Stoner v. California* (1964), 376 U.S. 483, 490. In *Buie*, the United States Supreme Court's decision authorized officers making in-home arrests to conduct a "protective sweep" or a "quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others." *Buie*, 494 U.S. at 327. The risk of danger in the context of an in-home arrest or otherwise on an "adversary's turf" is greater and the officer may take reasonable steps to ensure their own safety. Id. at 333-334.

{¶11} In *Buie*, the Supreme Court articulated two holdings: (1) during an in-home arrest, officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched" and (2) the officers may conduct a search that extends beyond those areas when they have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334. See also, *U.S. v. Stover* (2007), 474 F.3d 904, 911; *State v. Johnson*, 8th Dist. No. 82697, 2003-Ohio-6641, at ¶10.

{¶12} The *Buie* "protective sweep" is applicable to hotels as well. See *State v. Brewster*, 1st Dist. Nos. C-030024, C-030025, 2004-Ohio-2993, at ¶24. In the case at hand, the officers entered an open one-bedroom hotel room. The open room contained two beds. A bathroom was located in the back corner of the room. Officer Campbell testified that Milton was apprehended a few feet inside of the hotel room, and a protective sweep of the bathroom was then performed. In *U.S. v. Kaler*, the Sixth Circuit upheld a protective sweep of a hotel bathtub

5

without probable cause or reasonable suspicion because it was "an 'immediately adjoining space' under *Buie*." *U.S. v. Kaler* (2001), 11 Fed.Appx. 400, 402. There, officers forcibly entered a hotel room to execute an arrest warrant. Id. at 401. In conducting a protective sweep, "one of the officers pushed open the adjoining bathroom door, turned on the light, stepped into the bathroom, and pushed back the shower curtain." Id. The trial court properly denied the motion to suppress evidence found in the bathtub as a result of the protective sweep. Id. at 402.

{¶13} Here, as in *Kaler*, the officers searched the bathroom "immediately adjoining the place of arrest" and, under the first *Buie* holding, could do so "without probable cause or reasonable suspicion[.]" *Buie*, 494 U.S. at 334. This protective sweep was also properly limited in scope. "It consisted of a cursory visual inspection of the bathroom, the place in which a person might have been hiding, and lasted no longer than necessary to dispel the reasonable suspicion of danger." *State v. Brewster*, 157 Ohio App.3d 342, 2004-Ohio-2722 at ¶30. Accordingly, it was improper for the trial court to grant the motion suppress simply because the officers did not demonstrate concern for their safety.

{¶14} The State's sole assignment of error is sustained. The case is remanded to the trial court to determine whether the evidence seized from the bathroom and the hotel room should be properly admitted under the plain view exception.

III.

{¶15} Appellant's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.


---

CARLA MOORE
FOR THE COURT


WHITMORE, P. J.
CONCURS

DICKINSON, J.
DISSENTS, SAYING:

{¶16} As noted by the majority, in *Maryland v. Buie*, 494 U.S. 325 (1990), the United States Supreme Court recognized two levels of "protective sweep" in connection with an in-home arrest. *Id*. at 327. At the first level, police may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. At the

second level, based on "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene," police may look beyond "spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.*

{¶17} Police arrested Mr. Milton a step or two inside the door of his hotel room within 30 seconds after he had opened that door. Officer Campbell than walked through the hotel room to the bathroom, which was located at the other end of the hotel room. He spotted the matches inside the bathroom and the other evidence on his way back out of the hotel room. Under the facts of this case, the bathroom was not "immediately adjoining the place of arrest." Accordingly, the search in this case was a "second level" search that would have required articulable facts warranting a reasonably prudent officer in believing there was an individual posing a danger in the bathroom. There were no such facts. Accordingly, I would overrule the State's assignment of error and affirm the trial court's granting of Mr. Milton's motion to suppress.

APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellant.

ADAM VAN HO, Attorney at Law, for Appellee.